IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN RICHARD POCHET, )
        Plaintiff, )
)
v. ) 2: 16-CV-47
)
)
COMMISSIONER OF SOCIAL )
SECURITY, )
        Defendant. )

MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No.11) will be granted, the defendant's motion (ECF No.13) will be denied and the decision of the Commissioner will be reversed.

On January 11, 2016, Brian Richard Pochet, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.[1]

On March 12, 2013, the plaintiff filed an application for disability benefits alleging that he had been disabled since February 10, 2012 (R.192-198), and benefits were denied on June 6, 2013 (R.97-101). On July 15, 2013, the plaintiff requested a hearing (R.104) and pursuant to that request a hearing was held on August 7, 2014 (R.40-71). In a decision dated September 25, 2014, benefits were denied (R. 11-35), and on October 15, 2014, reconsideration was requested

---

[1] The plaintiff had also filed a claim for supplemental security income benefits which was denied on March 19, 2013 (R.85-96) and June 6, 2013 (R.97-101) based on excessive resources.

(R.6). Upon reconsideration and in a decision dated November 18, 2015, the Appeals Council affirmed the prior determination (R.1-5). On January 11, 2016, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Johnson v. Comm'r.</u> 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. <u>Hartranft v. Apfel</u>, 181 F.3d 358 (3d Cir.1999).

At the hearing held on August 7, 2014, (R. 40-71), the plaintiff appeared with counsel (R.42) and testified that he was born on January 22, 1971 (R.45); that he graduated from high school and attended some college courses (R.45) and that following a fall, he lost nine years of memory retention (R.46).

The plaintiff also testified that he has a long history of seizures (R.48-59); that over a six year period he suffered about twelve grand mal seizures (R.55); that he also experiences petit mal seizures on a daily basis which last one to two minutes during which time he "freezes" and has no recollection of the event (R.55-56, 59); that he has a low level of concentration ability (R.59); that he suffers from daily headaches (R.65); that he follows his doctor's orders (R.61) and that he sees a psychiatrist weekly (R.62).

The plaintiff's mother testified (R.66-68) that while the plaintiff lives independently five minutes from her home, she and her husband assist him on a daily basis (R.66-67); plaintiff fell earlier that year and didn't even remember that she was present or what had occurred (R.67-68); that she gets him out of bed every day and takes care of him (R.67, 70); that she forces him to go outside on a daily basis (R.68); that the plaintiff does not drive because of his medical condition (R.68); that she does not believe he should be alone (R.68); and that the plaintiff does little other than sleep all day (R.69).

A vocational expert report was also submitted (R.287-289). When asked to assume an individual of the plaintiff's age, education and work history the witness indicated that such an individual would be able to engage in simple, routine, repetitive tasks. However, the report also concluded that if the individual required unscheduled rest breaks of 15 minutes an hour, absenteeism of over four days a month, a twenty per cent reduction or departure from standards for productivity, or required direct supervision, such an individual could not be employed.

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain evidence was reviewed.

The plaintiff was hospitalized at Allegheny General Hospital from March 26, 2008 through April 3, 2008 following a seizure in which he sustained traumatic brain injury and a clavicular fracture. Upon discharge he was to resume medical care and avoid heavy lifting (R.298-336).

The plaintiff was treated at the Excela Health Latrobe Hospital emergency Department between December 14, 2011 and February 11, 2012 for evaluation and treatment of his seizure disorder (R.337-396).

4

An EEG recorded on March 8, 2012 was interpreted as normal. A seizure disorder was diagnosed, and the plaintiff was cleared to return to work (R.399-401).

The plaintiff was treated at the Latrobe Family Health Center between January 31, 2012 and July 31, 2012 for a seizure disorder. He received medication. Alcoholism and memory lapses were also noted. The plaintiff was precluded from climbing, operating machinery and driving. He was said to be physically capable of light work (R.408-419).

The records from Westmoreland Neurology for the period from August 8, 2012 through January 22, 2013 reflect treatment for partial seizures, tension headaches, migraine headaches and cervical strain (R.422-428).

The Excela Latrobe Hospital records for the period from September 3, 2005 through August 29, 2010 as well as a psychological evaluation conducted on May 24, 2013 contain diagnoses of dysthymic and amnesia disorders due to head trauma. His only limitations were in understanding and executing complex instructions. The plaintiff also had several treatments for a seizure disorder (R.443-547).

The plaintiff received unemployment compensation from March 2012 through June 2013 (R.210).

The plaintiff was treated by his neurologist, Michael K. Sauter, M.D. between July 29, 2013 and June 3, 2014 and was diagnosed with a partial seizure complex, depression, anxiety and migraine and tension headaches,. The plaintiff was prohibited from driving by state law. His EEG "suggested" normal brain functioning (R. 549-555).

The plaintiff was treated by Dr. Joel L. Last between August 27, 2013 and July 15, 2014. A diagnosis of major depression which improved with medication as well as a seizure disorder

was made. The doctor concluded that the plaintiff would have difficulty being gainfully employed (R.557-570).

In a mental health impairment questionnaire completed on July 24, 2014, Dr. Lindsay Groves made a primary diagnosis of depression and well as chronic and severe cognitive impairment. She observed "clinical depression and anxiety, but severe cognitive impairments due to head trauma and ongoing seizures." She further observed 80% off task time and an 80% need for supervisory redirection and concluded that the plaintiff could not be employed (R.573-586, 589-591).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the

impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

>Based on the evidence presented, the Commissioner concluded:

>>The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

>>The claimant has not engaged in substantial gainful activity since February 10, 2012... However, he acknowledged receiving unemployment benefits from March 2012 through June 2013…

>>The claimant has the following severe impairments: seizure disorder, history of head trauma, times two with cognitive impairment, depression, and tension headaches/migraines…

>>The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…

The medical records do not reflect evidence of convulsive seizure activity occurring more frequently than once a month in spite of at least 3 months of prescribed treatment as required … The record does not show nonconvulsive epilepsy documented by detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment as required … The medical record reflects that his partial seizure disorder was controlled on an anticonvulsant medication regime …

In addition, the record does not show the claimant has significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station, as required… Nor does the record reflect a physical impairment or combination of physical impairments imposing such functional limitations to be medically equivalent in severity to any section of Appendix 1. The February 10, 2012 CT scan of cervical spine showed a subtle disc bulging at C3-C4 with no associated central or foraminal stenosis. The neurological examinations generally do not document any physical findings of the neck or cervical spine and the examination of July 2014 noted no degenerative changes on musculoskeletal examination. The neck was supple and full active range of motion and no Spurling's sign.

For purposes of this decision, the claimant has exhibited signs and symptoms of a cognitive impairment secondary to the seizure disorder and prior head injuries… However, the severity of the claimant's mental impairments does not meet or medically equal the criteria of listings 12.02 or 12.04…

The undersigned acknowledges that the consultative examiner, Lindsey Groves, Psy.D., in the Physician's Report dated July 24, 2014 opined that the claimant's impairments meet Social Security Listings for Affective Disorder, Anxiety-Related disorders, and Organic Mental Disorders. In addition, she determined that the claimant had extreme restrictions in activities of daily living, marked difficulties in social functioning, extreme difficulties in maintaining concentration, persistence, and pace and three episodes of decompensation, each of extended duration. However, the foregoing opinions upon the issue of listing level mental impairments are of little weight as opinions set forth on fill-in-the-blank/check-marked type forms, unaccompanied by explanation or rationale, are considered weak evidence at best … As demonstrated herein, her functional assessments of marked and extreme are not consistent with the other evidence of record,

including the response by Dr. Last, claimant's treating psychiatrist on a similar form of mild restrictions in activities of daily living; moderate difficulties in social functioning; mild difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation, each of extended duration…

In activities of daily living, the claimant has mild restriction. In his written statements for the record, claimant reported that he required someone to be present when he performed any activities of daily living including maintaining his personal care. However, the totality of the evidence demonstrates that the claimant is independent in maintaining his personal care and capable of performing basic household tasks… During the consultative examination of May 2013, claimant reported that he could operate a microwave oven, did his own laundry, and could do small things such as vacuum a small area, shopped for his own needs but preferred to be accompanied and could manage his personal finances and had a checking account. ..

In social functioning, the claimant has no more than moderate difficulties. Claimant reports that he has few friends, little interest in social activities and isolates in his apartment except for when his mother makes him do things. Dr. Seilhamer, the consultative examiner opined that he impressed as having an awareness of social conventions and social expectations and could behave accordingly. Dr. Last, claimant's treating psychiatrist indicated that the claimant isolated but determined that he had no more than moderate difficulties in maintaining social functioning. Although Dr. Groves assessed the claimant as having marked degree of functional limitations in social functioning, she rated his ability to relate to co-workers, deal with the public and interact with supervisors as good…

With regard to concentration, persistence or pace, in light of the combination of the claimant's seizure disorder with residual cognitive impairments and depression, the claimant has moderate difficulties… Dr. Seilhamer, the consultative examiner, concluded that the claimant had impaired concentration and mental acuity but was capable of understanding, remembering and carrying out simple instructions and making simple work related decisions. Dr. Last's assessment of mild difficulties in maintaining concentration, persistence, and pace … is consistent with the normal mental status examination findings that he was cognitively intact. Dr. Groves' assessment of extreme limitations in this domain is not consistent with the other evidence of record.

As for episodes of decompensation, there is no evidence that the claimant has experienced any episodes of decompensation, which have been of extended duration…

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied…

After careful consideration of the entire record, the undersigned finds that the claimant is capable of unlimited exertional activity but is precluded from all exposure to hazards such as unprotected heights and dangerous machinery. He is relegated to simple, routine, repetitive tasks entailing no exercise of independent judgment or discretion; no change in work processes; no interaction with the general public; and no more than incidental interaction with co-workers. Incidental is defined as totally up to but not more than 1/6 of a routine work shift.

\*\*\*

The evidence of record reflects that the claimant has the residual functional capacity for unlimited exertional activity. However, due to the combination of his seizure disorder, tension headaches, depression, and cognitive impairments, he is precluded from all exposure to hazards such as unprotected heights and dangerous machinery. Given the combination of his physical and mental impairments, he is relegated to simple, routine, repetitive tasks entailing no exercise of independent judgment or discretion and no change in work processes. In addition, he should not interact with the general public and have no more than incidental interaction with co-workers, which is defined as totaling up to but nor more than 1/6 of a routine work shift. In sum, the residual functional capacity assessment appropriately reflects the medical evidence while accommodating the claimant's subjective complaints. The residual functional capacity addresses the claimant's physical and mental impairments by limiting his exposure to hazards, task complexity, pace and social interaction…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge submitted interrogatories to the vocational expert asking whether jobs exist in the national economy for an individual with the claimant's age,

education, work experience, and residual functional capacity. The vocational expert responded that given all of these factors the individual would be able to perform the requirements of representative occupations …

In interrogatory #4, the vocational expert was asked to consider the impact of additional restrictions or accommodations on the occupational base identified in his response … The vocational expert further responded that there would be no jobs based on the hypotheticals posed … Although the undersigned has fully considered the additional work-related limitations as posed, they are not supported by the expanded record and therefore, were not incorporated into the residual functional capacity assessment…

Based on the responses of the vocational expert, the undersigned concludes that, consideratating the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate … (R. 16-34).

The record clearly demonstrates that as a result of a fall, the plaintiff experiences seizures and as a result has limitations on his daily activities. Dr. Last, a psychiatrist who treated the plaintiff between August 27, 2013 and July 15, 2014, diagnosed a major depressive disorder and concluded that the plaintiff would have difficulty maintaining gainful employ (R.557-559); Dr. Lindsey Groves, a psychologist also diagnosed a major depressive disorder and likewise concluded on July 24, 2014 that the plaintiff could not be employed.(R.573-586) and Dr. Carlos J. Marrero, a neurologist reported on March 7, 2012 that the plaintiff suffers from a seizure disorder but concluded that the plaintiff could return to work (R.400-401). While the medical evidence might support a finding that the plaintiff is not disabled solely as a result of his seizure disorder, those examiners who coupled the seizure disorder with his psychological disorders concluded that he cannot be gainfully employed. For this reason, the Commissioner's conclusion to the contrary is not supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. <u>Chauarriaga v. New Jersey</u> 806 F.3d 210 (3d Cir. 2010). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is not supported by substantial evidence. For this reason, the

plaintiff's motion for summary judgment will be granted, the defendant's motion for summary judgment will be denied, and the decision of the Commissioner will be reversed.

    An appropriate Order will be entered.

Filed:  June 27, 2016　　　　　　　　　　　　　　s/Robert C. Mitchell
                                                                      United States Magistrate Judge